IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **REEFEDGE NETWORKS, LLC**, | |
| Plaintiff, | C.A. No. 12-1150 (LPS) |
| vs. | |
| **NETGEAR, INC.**, | |
| Defendant. | |

## PLAINTIFF REEFEDGE NETWORKS, LLC'S NOTICE OF RULE 30(b)(6) DEPOSITION FOR NETGEAR, INC.

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, ReefEdge Networks, LLC ("ReefEdge") will take the deposition upon oral examination as follows:

| | |
|---|---|
| Deponent: | Netgear, Inc. |
| Time: | 9:00 a.m. |
| Date: | February 4, 2014 |
| Location: | Russ August & Kabat |
| | 12424 Wilshire Blvd. |
| | Suite 1200 |
| | Los Angeles, CA 90025 |

unless another date, time and/or location are otherwise mutually agreed upon, and continuing day to day until completed to the extent allowed under the provisions of the Scheduling Order governing these matters. Pursuant to Federal Rule of Civil Procedure 30(b)(2), the testimony shall be recorded by stenographic means, including the use of real time transcription (*i.e.,* Live Note), sound and/or visual means (*i.e.*, videotape). Netgear is directed to designate and produce, pursuant to Federal Rule of Civil Procedure 30(b)(6), one or more of its officers, directors,

managing agents, or other designated persons, to testify on its behalf as to the information known or reasonably available to the deponent concerning the matters set forth in Attachment A attached hereto.

In addition, your Rule 30(b)(6) designees shall bring to this deposition all documents not previously produced by Netgear that were reviewed, relied upon, or consulted in preparation for this deposition.

Netgear shall identify the designee of each topic to ReefEdge's counsel in writing at least five business days in advance of the Rule 30(b)(6) deposition.

Dated: January 3, 2014

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Marc A. Fenster (admitted *pro hac vice*)
Andrew D. Weiss (admitted *pro hac vice*)
Alexander C.D. Giza (admitted *pro hac vice*)
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031
(310) 826-7474
mfenster@raklaw.com
aweiss@raklaw.com
agiza@raklaw.com

*Attorneys for Plaintiff*
*ReefEdge Networks, LLC*

## ATTACHMENT A

## DEFINITIONS

1.      "You," "Your" and "Netgear." The words "you," "your" or "Netgear" mean Netgear, Inc., and its past and present direct and indirect parents, subsidiaries, affiliates, divisions, business units, predecessors in interest, and further includes their respective past and present officers, directors, agents, employees, members and representatives, and all other persons acting on behalf of any of them.

2.      "ReefEdge Networks, LLC."  "ReefEdge Networks, LLC" means ReefEdge Networks, LLC and its past and present direct and indirect parents, subsidiaries, affiliates, divisions, business units, predecessors in interest, and further includes their respective past and present officers, directors, agents, employees, members and representatives, and all other persons acting on behalf of any of them.

3.      "ReefEdge, Inc."  "ReefEdge, Inc." means ReefEdge, Inc. and its past direct and indirect parents, subsidiaries, affiliates, divisions, business units, predecessors in interest, and further includes their respective past and present officers, directors, agents, employees, members and representatives, and all other persons acting on behalf of any of them.

4.      "ReefEdge Networks Inc."  "ReefEdge Networks Inc." means ReefEdge Networks Inc. and its past direct and indirect parents, subsidiaries, affiliates, divisions, business units, predecessors in interest, and further includes their respective past and present officers, directors, agents, employees, members and representatives, and all other persons acting on behalf of any of them.

5.      "Accused Instrumentalities."  "Accused Instrumentalities" means the products identified in ReefEdge Networks, LLC's operative Disclosures Pursuant to Paragraph 4.a of the Default Standard for Discovery.

6.      "Patents-in-suit."  "Patents-in-suit" means U.S. Patent No. 6,633,761, U.S. Patent No. 6,975,864 and U.S. Patent No. 7,197,308.

7.      "Document."  The term "document" means documents and tangible things, including electronically stored information, within the full scope of the Federal Rules of Civil Procedure.

8.      "Person."  The term "person" refers both to natural persons and entities including individual proprietorships, partnerships, corporations, groups, governmental bodies, associations, joint ventures and other organizations, and the acts and knowledge of a person are defined to include the acts and knowledge of that person's directors, officers, members, employees, representatives, agents and attorneys.

9.      "Relating/Related."  The terms "relating" or "related" mean in any way, directly or indirectly, in whole or part, relating to, concerning, referring to, discussing, mentioning, regarding, pertaining to, describing, reflecting, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, modifying,

amending, confirming, endorsing, representing, supporting, qualifying, terminating, revoking, refuting, undermining, canceling, contradicting or negating.

10.    "All/each."  The terms "all" and "each" shall be construed as "and", "each", and "and/or."

11.    "Any."  The term "any" should be understood in either its most or least inclusive sense as will bring within scope of the discovery request all responses that might otherwise be construed to be out of its scope.

12.    "And/or."  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

13.    "Number."  The use of the singular form of any word includes the plural and vice versa.

14.    "Affiliate."  "Affiliate" is defined as a person that directly, or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified.  Relative to the definition of "affiliate," control means the possession, direct or indirect, or the power to direct or cause the direction of management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

15.    "Identify," when used with reference to:

a.    an individual person, means to state his or her full name, present or last known employer, job title, general job description, present or last known residence addresses and telephone number, and present or last known business addresses and telephone number;

b.    a business entity, means to state the full name and address of the entity and the names and positions of the individual or individuals connected with such entity who have knowledge of the information requested;

c.    a document, means to identify the document by bates number, or if it is not bates numbered, to state the type of document (letter, memorandum, email, etc.), its date, author(s) or originator(s), addressee(s), all individuals who received copies of the document, the identity of persons known or presumed by you to have present possession, custody or control thereof, and a brief description of the subject matter and present location. If the document has already been produced, "identify" means to provide the production number of the document; and

d.    a product, software system, or service, means to specify a part number; trade name; catalog number; version number; and any other designation used to refer to the product, software system, or service.

**INSTRUCTIONS**

4

1.      In the event you refuse to fully respond to a deposition topic because it is overly broad, you shall at least respond to that portion of the request that is unobjectionable and specifically identify that portion of the request that is allegedly overly broad.

2.      In the event you refuse to fully respond to a discovery request because it is unduly burdensome, you shall at least respond to that portion of the request that is unobjectionable and specifically identify that portion of the request that is allegedly unduly burdensome.

3.      These discovery requests are deemed to be continuing in nature and, to the extent required by the Federal Rules of Civil Procedure, the responding party is to supplement its responses with information or documents that may become known or available to it after the date of its initial response.

4.      To the extent any documents requested to be identified have not been produced, they are overdue and should be promptly produced.

5.      Your Rule 30(b)(6) designees shall bring to this deposition all documents reviewed, relied upon, or consulted in preparation for this deposition.

## RULE 30(b)(6) TOPICS

1.      The past and present design, development and operation of the Accused Instrumentalities, including but not limited to:

   a.   how the Accused Instrumentalities connect with client devices;

   b.   how the Accused Instrumentalities perform layer 2 and layer 3 roaming;

   c.   how the Accused Instrumentalities track the location of a particular client device;

   d.   how access points used in the Accused Instrumentalities discover a wireless controller;

   e.   how the Accused Instrumentalities register, configure and manage access points; and

   f.   how the Accused Instrumentalities perform DHCP functionality.

2.      The source code implementing the Accused Instrumentalities, including but not limited to:

   a.   how the Accused Instrumentalities connect with client devices;

   b.   how the Accused Instrumentalities perform layer 2 and layer 3 roaming;

   c.   how the Accused Instrumentalities track the location of a particular client device;

   d.   how access points used in the Accused Instrumentalities discover a wireless controller;

    e.  how the Accused Instrumentalities register, configure and manage access points; and

    f.  how the Accused Instrumentalities perform DHCP functionality.

       3.    The identity, location, custodian(s) and general description of the contents of documents that relate to the past and present design, development and operation of the Accused Instrumentalities, including but not limited to:

    a.  how the Accused Instrumentalities connect with client devices;

    b.  how the Accused Instrumentalities perform layer 2 and layer 3 roaming;

    c.  how the Accused Instrumentalities track the location of a particular client device;

    d.  how access points used in the Accused Instrumentalities discover a wireless controller;

    e.  how the Accused Instrumentalities register, configure and manage access points; and

    f.  how the Accused Instrumentalities perform DHCP functionality.

       4.    The people most knowledgeable people regarding the past and present design, development and operation of the Accused Instrumentalities, including but not limited to:

    a.  how the Accused Instrumentalities connect with client devices;

    b.  how the Accused Instrumentalities perform layer 2 and layer 3 roaming;

    c.  how the Accused Instrumentalities track the location of a particular client device;

    d.  how access points used in the Accused Instrumentalities discover a wireless controller;

    e.  how the Accused Instrumentalities register, configure and manage access points; and

    f.  how the Accused Instrumentalities perform DHCP functionality.

       5.    Any material or significant changes to the functionality of the Accused Instrumentalities from the introduction of the Accused Instrumentalities to present, including but not limited to changes to:

    a.  how the Accused Instrumentalities connect with client devices;

    b.  how the Accused Instrumentalities perform layer 2 and layer 3 roaming;

    c.  how the Accused Instrumentalities track the location of a particular client device;

    d.  how access points used in the Accused Instrumentalities discover a wireless controller;

    e.  how the Accused Instrumentalities register, configure and manage access points; and

    f.  how the Accused Instrumentalities perform DHCP functionality.

6.    The methods, manner and means by which you memorialize or document actual, planned or proposed changes to the Accused Instrumentalities, including the documents created for or during the process and the identity of the persons knowledgeable about the process.

7.    The facts and circumstances of consideration or decision-making regarding acquisition of, development of, or expenditures related to the Accused Instrumentalities, including relating to the purchasing, operating, maintaining and/or licensing of any Accused Instrumentalities and the identity of the persons knowledgeable about this topic.

8.    The facts and circumstances of consideration or decision-making regarding acquisition of, development of, or expenditures related to the roaming features of the Accused Instrumentalities and the identity of the persons knowledgeable about the foregoing.

9.    The facts and circumstances of consideration or decision-making regarding acquisition of, development of, or expenditures related to the automatic access point configuration features of the Accused Instrumentalities and the identity of the persons knowledgeable about the foregoing.

10.    The information provided by you to your end-users regarding the roaming and/or automatic access point configuration features of the Accused Instrumentalities, include through your technical support services.

11.    Your knowledge of the patents-in-suit, including when you first learned of the patents-in-suit.

12.    The actions taken by you to avoid infringement of the patents-in-suit by you or the users of the Accused Instrumentalities since you learned of the patents-in-suit.

13.    The identity of all of your customers of the Accused Instrumentalities.

14.    The identity of your affiliates, resellers, distributors and partners that sell the Accused Instrumentalities.

15.    The identity of how you sell the Accused Instrumentalities, including whether you sell the Accused Instrumentalities as packages or bundled in some manner.

16.    The U.S. price-per-unit, sales revenue, gross profits, net profits and costs (including costs of sales) attributable to the Accused Instrumentalities and the person(s) most familiar with the foregoing, and the documents most relevant to the foregoing.

17.     The number of units of the Accused Instrumentalities sold in the U.S.

18.     The sales, distribution, and importation of the Accused Instrumentalities.

19.     The marketing of the Accused Instrumentalities.

20.     The benefits, both direct and indirect, to you as a result of the Accused Instrumentalities.

21.     Your patent license agreements, and proposed license agreements, whether or not ultimately executed, related to wireless networking and/or the Accused Instrumentalities, including, but not limited to, license agreements, covenants, releases, and settlements.

22.     Any technology or software licenses or agreements that you contend relate to technology comparable to that disclosed in the patents-in-suit.

23.     Your policies, procedures and practices regarding licensing patents and technology.

24.     The benefits, costs, and effects of any commercially available non-infringing alternatives or design-arounds to the patents-in-suit, to the extent you maintain that any such alternatives exist.

25.     The facts supporting your affirmative defenses and counterclaims.

26.     Any alleged prejudice resulting from an alleged unreasonable delay in ReefEdge having filed suit.

27.     Your communications with third parties regarding this litigation, including communications with the press and potential fact witnesses such as third parties subpoenaed in this litigation, authors of alleged prior art and former ReefEdge, Inc. or ReefEdge Networks Inc. employees,

28.     Your organizational and corporate structure, and all departments, teams, or groups responsible for the business, financial, engineering, or advertising operations of the Accused Instrumentalities.

29.     Your efforts to collect and produce documents in this litigation, including the custodial and non-custodial sources searched, how the determination was made as to whether to collect a document and the search terms, if any, used in collecting and producing documents.

30.     Your document retention policies and procedures, including any backup systems (*e.g.*, tapes, hard drives, servers, and e-mail systems).

31.     Your efforts to prepare to be deposed on the topics above.